## Ira Allen v. The State.

No. 12961.  Delivered January 29, 1930.
Rehearing denied March 12, 1930.
Reported in 25 S. W. (2d) 850.

The opinion states the case.

*Wallace Hughston* and *L. J. Truett,* both of McKinney, and *Sam Neathery* of Houston, for appellant.

*J. E. Abernathy,* Co. Atty., and *W. C. Dowdy,* Asst. Co. Atty., both of McKinney, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, felony theft; penalty, two years in the penitentiary.

The only question necessary to notice is the sufficiency of the evidence to corroborate the accomplice Fryar upon whose testimony the State chiefly relied for a conviction.  Fryar testified to the entry by appellant, one Talmage Hines and himself of the Pope Theater in the nighttime and of taking therefrom a small safe.  He testified that after putting the safe in the car, they took it to the home of Talmage Hines, bursted the bottom of it open with an axe and took from it a little more than $400.00, $110.00 of which was in silver, the remainder in greenback.  He testified that the money was divided equally among the three, Talmage Hines taking all of his in greenback and he and appellant dividing the silver equally between them, which was mostly nickels, dimes, quarters and half dollars. Each of the two put his respective share of the silver in a sock and the two went home something like three o'clock in the morning.

Appellant lived near the home of Fryar. Fryar's father saw the flash of a light in appellant's home about ten minutes after the arrival of his son home. The next morning the two went around together and were seen by witnesses. In the afternoon they drove to the neighboring town of Plano, where the accomplice testified appellant suggested they could go to a friend of his, Joe Vance, who was in the cafe business, and get him to go to the bank and change their silver into greenback. He testified they did go there, took their silver from the two socks, counted it out; that it counted $109.75; that Joe Vance took the money, went to the bank, exchanged it as requested and returned and it was again counted and handed back to witness and appellant. Joe Vance testified in corroboration of this witness to substantially the same facts. A banker in Plano testified to the exchange. A witness in Dallas testified to having seen appellant in the City of Dallas a short time after she heard of the burglary with a roll of bills in his hand and heard him say, "Boy looky here." She heard Mr. Brazil ask him, "Where did you get it," and the appellant said, "I managed for it." Witness Joe Vance testified that he asked appellant where he got the money and he said he got it scuffling around or hustling around, something like that. Other witnesses testified to facts showing the entry into the Pope Theater building by someone on the night in question and of the presence there of certain physical evidences of the crime charged. The owner of the money and safe testified to their loss, and to the presence in the safe prior to the theft of approximately the same amount and character of money in the same denomination as testified to by the accomplice. The broken safe was found at the place where the accomplice testified it was left after being rifled. Appellant for himself testified to an alibi and corroborated the same by many witnesses. He denied making the statements about where he got the money, mentioned above. He denied having possession of same in a sock at Joe Vance's restaurant or of counting the same. He admitted his presence with Fryar at Vance's restaurant and that he believed the money had been stolen but denied that he knew it. As a witness he became somewhat confused in his testimony with reference to what happened at Joe Vance's restaurant and preceding that time.

Viewing the record as a whole, we believe the corroborative testimony meets the demands of the law. We are not able to distinguish this case from that of Lopez v. State, 242 S. W. 212, which was affirmed in an opinion by Judge Lattimore upon facts not any stronger than those of the instant case. It has been ofttimes stated

that corroborative evidence need not be such as is sufficient to convict independent of that of the accomplice. Grice v. State, 298 S. W. 597; Wright v. State, 31 Tex. Crim. Rep. 354. See also Morse v. State, 293 S. W. 569.

Much testimony was introduced showing the general bad character of the accomplice, which was abundantly sufficient to discredit him. His credibility, however, was a matter which the jury alone may pass on under the law and with whose decision we cannot interfere. This Court has no right to substitute its personal inclination or conclusion in a matter of this kind for that of the jury.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, Judge.—We have examined with interest the analysis of the facts made in connection with appellant's motion for rehearing, but are unable to bring ourselves to agree with his conclusions. The testimony showed the burglary of a picture show from which was taken more than one hundred dollars in nickels, dimes, quarters and half dollars. The picture show was located in McKinney, Collin county, Texas. Appellant lived three or four miles from McKinney. According to the testimony of George Fryar, an accomplice, the State's case was fully made out, which fact was admitted by appellant, save that he contended that there was not sufficient corroboration of said accomplice. Fryar testified that the next day after the burglary he and appellant went to Plano, another town in Collin county, and that they there went into the restaurant of one Vance and induced him to take two socks full of nickels, dimes, quarters and half dollars, to a bank and get same exchanged for currency. Vance testified that appellant and Fryar came to his restaurant the day following the night of the alleged burglary, and that each had and handed to witness a sock full of nickels, dimes, quarters and half dollars. He knew appellant but did not know Fryar. He said appellant wanted him to take this silver to the bank and get it exchanged for currency, but that witness objected and told appellant he did not have time and advised him to go, but later he yielded to appellant's insistence, took the silver to the bank and exchanged it for currency. An employee of the bank said that on the

occasion mentioned he gave to Mr. Vance currency for $109.75 in small change. He said there was ten dollars in nickels, and about thirty dollars in dimes, and around fifty dollars in quarters and halves, mostly quarters. We regard appellant's possession of this quantity of small money on the day after the burglary and the loss of such a large quantity of similar money, a circumstance in itself of sufficient cogence to furnish the corroboration required by statute, to the testimony of an accomplice. It would seem impossible to conceive but that more than one hundred dollars in nickels, dimes, quarters and halves being stolen on one night and the accused, without explanation, being found the next day in that vicinity in possession of money of the same sort, would tend to connect him with the theft or burglary.

The motion for rehearing is overruled.

*Overruled.*